### No. 395
DETROIT, T. & I. RD. CO. v. BAUER, Exex.
No. 18164.  Ohio Supreme Court
Pending on motion to direct Clark Appeals to certify record.

**829.  NEGLIGENCE — Rights of traveler approaching railroad crossing.**

This was an action in the Clark Common Pleas for damages for the death of Bauer, at a railroad crossing. The issues for the jury were negligence of defendant in allowing obstruction, alleged bad order of electric alarm bell, alleged failure to ring ocomotive bell, alleged excessive speed for train, etc.; contributory negligence of Bauer in failing to look and listen, and in driving his automobile on the track immediately in front of approaching train. The trial resulted in a general verdict for the defendant, and findings upon seven special interrogatories, favorable to defendant.

The Court of Appeals held that there was error in giving two special instructions, in submitting to the jury certain special interrogatories, and that there was undue repetition of special charges with the giving of four special interrogatories upon the issue of contributory negligence.

(Continued on Page 414)

## CURRENT OHIO COURT of APPEALS CASES
### Weekly Advance Abstract Opinions

No. 383
KOBLITZ v. PUSCAK
Ohio Appeals, 8th Dist., Cuyahoga County
No. 4941. Decided March 3, 1924

147. BILLS AND NOTES—Fraud is no defense against a bona fide purchaser for value of negotiable paper who is a holder in due course.

PER CURIAM.
Epitomized Opinion
Published Only in Ohio Law Abstract

This was an action brought by a holder of certain promissory notes against the makers, Andy Puscak and Mary Puscak. The defense of the makers was that the notes were obtained by fraud, but they did not allege nor prove that Koblitz, the holder, knew of this fraud, and therefore took the notes subject to the defenses. The evidence disclosed that Koblitz was a bona fide purchaser for value before maturity. It also showed a fraudulent use of the money by the man to whom the makers gave these notes. In other words, the evidence disclosed that the defendants signed the notes but that the signatures were obtained through fraudulent representations. The Common Pleas rendered a judgment for degendants. In reversing the judgment of the lower court, the Court of Appeals held:

1. As the plaintiff purchased the paper for value without knowledge of any fraudulent acts, he was a holder in due course and was entitled to recover the amount of said notes.

Attorneys not given.

No. 384
MAHER v. COLLECTION CO., Inc.
Ohio Appeals, 8th Dist., Cuyahoga County
No. 4955. Decided April 18, 1924

147. BILLS AND NOTES—A party to a fraud who subsequently gains possession of a negotiable instrument obtained through fraud, cannot claim that it is entitle to the rights of a holder in due course.

PER CURIAM.
Epitomized Opinion
Published Only in Ohio Law Abstract

Maher filed a petition to set aside or vacate the former judgment of the Cuyahoga Common Pleas in which he was the defendant and the Collection Co. was plaintiff, in which case judgment was rendered against him and affirmed by the Court of Appeals. In the original suit the evidence showed that the Collection Co. had taken negotiable paper from the

Bank of New Orleans which was a bona fide holder for value before maturity. The petition set forth facts which, if true, showed that fraud was committed in the beginning by the Collection Company. A demurrer was filed to this petition by the Collection Company and sustained. Maher prosecuted error. In reversing the lower court, the Court of Appeals held:

1. If a promissory note gets into the hands of a bona fide holder, it is good in the hands of any person, except those persons who are guilty of the original fraud and were interested parties in the beginning, into whose hands it again falls and they bring the suit.

Attorneys—Not given.

No. 385
REVIEW PUB. CO. and HOILES v.
WESTOVER
Ohio Appeals, 7th Dist., Mahoning County
Decided Jan. 4, 1924

715. LIBEL—Verdict held not manifestly against weight of evidence—No error held to exist on court's charge on words libelous per se—Mitigating circumstances held admissible to reduce exemplary damages.

770. MISCONDUCT—Undue criticism by court held prejudicial error.

1235. VERDICT—Verdict of $23,000 held excessive under facts of case.

ROBERTS, J.
Epitomized Opinion
Published Only in Ohio Law Abstract

Westover, the mayor of Alliance, filed an action in the Common Pleas Court founded in libel, against the Review Publishing Co. and one Hoiles. The libellous matter complained of consisted of an article in the newspaper, which censored the mayor for permitting certain red light districts to exist in the City of Alliance. A portion of the printed article provided: "The Review understands that Mayor Westover has an agreement with the resort keepers whereby they may run their houses of shame in the day time provided they shut up at night. And it is our understanding that it was because Mattie Hayes broke the mayor's rules for running these resorts that she was brought into police court, etc."

Shortly after this article appeared, the mayor wrote the newspaper demanding a retraction, which was refused. This article ap-

## STATE COURT OF APPEALS—Continued

peared on June 8th. Another alleged libelous article was published on June 19th. The petition contained only one cause of action in which it claimed both of these publications to be libelous in character. The first trial resulted in a verdict of $8,000. The case was then reversed and re-tried, and a verdict returned in favor of the plaintiff for $23,000. In reversing the judgments of the lower courts, the Court of Appeals held:

1. That the verdict was manifestly against the weight of the evidence.

2. As the court expressly limited in his instruction the publications that were actionable per se to the first and third publications, which were actionable per se, and did not include the publications which merely contained a refusal to retract, no prejudicial error was committed.

3. Mitigating circumstances tending to prove good faith are admissible to mitigate exemplary damages but not compensatory damages.

4. As the court unduly criticized counsel for defendant in the presence of the jury in such a manner as to prejudice their minds, prejudicial error was committed in this respect.

5. The verdict of $23,000 was held excessive under the facts of the case, even though the plaintiff was a public officer.

Attorneys—Moore, Barnum & Hammond, Youngstown, and Hart & Koehler, Alliance, for Review Pub. Co.; Hahn & Henderson, Youngstown, for Westover.

---

No. 386

GEORGE v. JOHNSON CANDY CO.

Ohio Appeals, 9th Dist., Wayne County
No. 771. Decided April 14, 1924

1225. VERDICT—Where both parties make motion for directed verdict, this does take case from jury if party to whom ruling is adverse, previously requests to go to jury—No presumption of waiver of jury held to exist in this case.

1063. SALES—Where goods are sold for unlawful purpose seller cannot recover price— Where seller assists buyer in unlawful purpose, the former has no recourse—Seller does not have to participate in unlawful purpose to bar recovery.

WASHBURN, J.

Epitomized Opinion
Published Only in Ohio Law Abstract

This was an action to recover purchase price of certain merchandise sold by the Johnson

Candy Co. to one George. The Johnson Company sold to George certain "punch board assortments" and punch boards to be used for gambling purposes. The undisputed evidence showed that the company knew the purposes to which these punch boards and candy assortments were to be put, and that it assisted in arranging these assortments in order that the chances on the boards be more salable. George maintained that as the goods were sold for gambling purposes no recovery could be had. The candy company claimed that the candy could be sold in another manner than by means of the punch board, and therefore it should recover for the value of the candy. At the close of the evidence the defendant moved for a directed verdict, whereupon the plaintiff also moved for a directed verdict.

When the court was about to pass upon the motion, counsel for George stated to the court that he desired to make a further request. The court, however, interrupted him stating that he might have any exception which he desired, then proceeded to overrule the motion of defendant and grant the motion of the Candy Company. Counsel for George then requested the court to charge the jury twelve written requests, which the court refused. The court thereupon directed the jury to sign a verdict in favor of plaintiff. George prosecuted error. In reversing the judgment of the lower court, and rendering final judgment for defendant, the Court of Appeals held:

1. Where each party asks for a directed verdict in his favor, and nothing further is said or done by them, a presumption arises that they intend to waive the right to a submission to a jury and consent that the court shall decide the question of law and fact involved, but that such a presumption does not arise where the party whose request is denied thereupon asks to go to the jury upon the question of fact.

2. As it was apparent in the instant case that counsel for George desired to make a request to go to the jury, and would have done so if the court had permitted him, no presumption that counsel intended to waive his right to a submission to the jury existed, and therefore the court committed error in directing a verdict for the plaintiff on the theory that George had waived a jury trial.

3. Where goods have been sold for the express purpose of enabling the buyer to violate the law, such as goods to be used in gambling device, the sale is unenforcible.

4. As the undisputed evidence showed that the seller not only knew the purpose for which

these candy assortments were to be used, but that the seller actually participated in and assisted the buyer in his unlawful purpose, no recovery can be had for the value of these goods.

5. It is not necessary for the seller of goods to actually participate in the actual use of an unlawful device in order to preclude a recovery for the purchase price, as the selling with full knowledge of the buyer's illegal purpose, accompanied by the assistance, aid and encouragement of the seller in this purpose is sufficient.

Attorneys—Weygandt & Ross and Willis Horn, for George; Critchfield & Etling, for Wm. C. Johnson Candy Co.; all of Wooster.

---

No. 387

LICKER v. STATE

Ohio Appeals, 8th Dist., Cuyahoga County
No. 5131.  May 9, 1924

480. EVIDENCE—Evidence of accused's state of mind at time he made a damaging admission held admissible as bearing on the weight to be given the admission.

VICKERY, J.                Epitomized Opinion
Published Only in Ohio Law Abstract

Licker was indicted and convicted in the Common Pleas for stealing an automobile. The automobile was owned by the complaining witness of the State, who had given a general consent to Licker to use this car at any time when he, the witness, was not using it. This permission had not been revoked up to and including the time when the occurrence took place for which Licker was indicted. There was evidence that Licker went to the garage for the purpose of getting the automobile out and directed the keeper of the garage to the telephone, by reporting that an accident had occurred, and a truck was wanted. This was not true. The only evidence of this was the statement of a policeman that Licker told him that this was done. The garage man was not called.

Defendant's counsel offered evidence to prove that Licker was feeble minded and addicted to the use of drugs and that he was under the influence of cocaine at the time of the occurrences above set forth. This evidence was not for the purpose of showing that Licker was not responsible for his acts, but to bear on the question of the weight to be given to a statement of the kind made to the policeman. The evidence was excluded by the trial court.

Defendant's counsel attempted to have Licker's brother testify that immediately after Licker went to jail, the brother went to see Licker and found the latter's mind was wandering. This evidence, the trial court excluded. Licker prosecuted error.  Held:

Inasmuch as the statement of Licker to the policeman was all the evidence given to disprove that Licker took the automobile, under consent of the owner, it became very important that the jury be given the evidence which would throw light upon his condition of mind when he made the statement. The excluded evidence was competent and should have been admitted, and its use limited by proper instructions to the jury. Reversed and remanded for a new trial.

Attorneys—Harry F. Glick, for Licker; E. C. Stanton, for State; both of Cleveland.

---

No. 388

ZANGERLE v. NAT. MALLEABLE
CASTINGS CO.

Ohio Appeals, 8th Dist., Cuyahoga County
No. 18454

1157. TAXATION, EXCESS PROFITS—Sums due the Federal Government as income and excess profits tax held deductable from the taxable values of a corporation's personal property.

PER CURIAM.              Epitomized Opinion
Published Only in Ohio Law Abstract

The National Malleable Castings Co. filed a petition in error in the Common Pleas Court to reverse or modify the findings of the Tax Commission of Ohio under GC. 5611-2. On May 1st, 1920, the Castings Company filed with the County Auditor its personal tax return as of Jan. 1st, 1920. In this return defendant deducted the sum of $275,000 from the sum of legal claims and demands owing to it, said amount being the estimated amount of excess profits and excess tax which it believed had accrued in favor of the U. S. Government up to and including Dec. 31, 1919. Exact amount was found to be $292,461.60. The County Auditor refused to permit said amounts to be deducted from said tax returned and corrected the reports accordingly. The Tax Commission of Ohio sustained the County Auditor. The Common Pleas of Cuyahoga County modified the finding of the Tax Commission to the extent of permitting the defendant to deduct from the sum of the legal claims and demands owing to it the amounts of income and excess profits tax. The court held the same to be legal bona fide debts of the defendant, which were properly the subject of deduction under 5327 GC. The Court of Appeals sustained the decision of the Common Pleas Court without opinion.

Attorneys—C. C. Crabbe and David E. Green, for Zangerle; Cook, McGowan, Foote, Bushnell & Burgess, for Castings Co.; all of Cleveland.

## STATE COURT OF APPEALS—Continued

### No. 389
### PERSONS v. BANK OF KNOBEL
Ohio Appeals, 9th Dist., Lorain County
No. 270.   Decided Feb. 14, 1924

1063. SALES—Measure of damages in sales contracts is regulated by 8449 GC.

481. EVIDENCE—A written exhibit speaks for itself and testimony as to what it consists of is erroneous.

FUNK, J.

Epitomized Opinion
Published Only in Ohio Law Abstract

The Bank of Knobel brought an action on a contract for a carload of lumber shipped by Holton Lumber Co. to defendants at Elyria, Ohio.

The account was assigned by Holton Lumber Co. to the bank. Defendants answered by general denial and further alleged that they had bought two cars of lumber instead of one, and that Holton Lumber Co. shipped only one car to defendant's damage, by reason of which defendant owed nothing on the account, and further alleged that the assignment to the bank was made to avoid liability for damages by reason of failure to ship the second car and in an effort to collect for partial performance.

The bank in its reply set up a general denial and further, that defendants had violated the contract by refusing to pay for the first car. Judgment of the court below was for the plaintiff.

The evidence shows a contract for one car only. Defendant Persons testified that the lumber in the car was not of the kind of lumber provided for in the contract. Principal errors complained of are error in the charge and in the admission and rejection of evidence.

The court charged that "the measure of recoupment of damages in a case of this character is the difference between the contract price of the car of lumber ordered by the defendants and the value of the lumber actually delivered to them."

The court permitted testimony to be introduced on behalf of the bank, to the effect that the shipment was in "compliance" with the order, and further permitted a witness on behalf of the bank to testify as to what one of its exhibits in evidence consisted of. Held:

1. The trial court erred in its charge to the jury as to the measure of damages. The measure of damages for breach of warranty is fixed by the legislature in 8449(7) GC.

2. The trial court erred in permitted the bank's witness to testify that the order had been complied with and further, in permitting the bank's witness to testify what its written invoice which was introduced in evidence, consisted of. The invoice speaks for itself.

Judgment reversed.

Attorneys—Fauver & Cheney, for Persons et; Findley & Myers, for Bank.

---

### No. 390
### STATE v. FORD MOTOR CO.
Ohio Appeals, 2nd Dist., Franklin County
No. 842.   Decided April 15, 1924

1283. WORKMEN'S COMPENSATION — Profit sharing system is part of wages and may be considered as payroll in determining premium it may collect for State insurance fund.

ALLREAD, J.              Epitomized Opinion
Published Only in Ohio Law Abstract

Action by the State to recover premium under the Workmen's Compensation Law upon a portion of the payroll of the Ford Motor Co. omitted from its return. The Co. alleged the omissions were gratuities to employes not dependent on services, but resting upon the social, civic and home life of the several employes. The State contended that the payments were part of the wage system and took the place of old age pensions and welfare work furnished by similar companies. Under 1465-53 GC., providing for classification of employments by the State Liability Board of Awards, the premium rate is required to be fixed upon the basis of the total payroll and number of employes. In reversing the judgment and holding that the State should recover, the Court of Appeals said:

1. "We are of opinion that the so-called gratuities or profit-sharing must be held to be a part of the wage system. Too much cannot be said in favor of the plan, but under the statutes the State has the right to collect the premium upon the actual payroll, including the so-called profit-sharing payments."

Attorneys—C. C. Crabbe, Atty. Gen., and H. H. Griswold, Spec. Atty., for State; Vorys, Sater, Seymour & Pease, for Motor Co.

---

### No. 391
### BRYANT HEATER CO. v. KIDD
Ohio Appeals, 8th Dist., Cuyahoga County
No. 4912.   Decided March 3, 1924

313. CORPORATIONS — Judgment modified on hearing but not reversed.

PER CURIAM.              Epitomized Opinion
Published Only in Ohio Law Abstract

This case was before the Court of Appeals on an application for a re-hearing. On the original hearing the Court of Appeals had reversed the judgment of the lower court, and

rendered a judgment (2 Abs. 216) for Winifred Kidd. Upon the re-hearing, the Court of Appeals reaffirmed its former judgment, but modified the same so as to read:

"Case reversed and remanded to the Common Pleas Court for further proceedings according to law."

Attorneys—Austin & Kirkbride, for Bryant Heater Co.; Snyder, Henry, Tilden, Ford & Seagrave, for Kidd; all of Cleveland.

## SUPERIOR COURT
### No. 392
### ARMENTROUT v. CAN-BIT COAL CO et al
Superior Court of Cincinnati
No. 58666

147. BILLS AND NOTES—No parol agreement held to exist to alter liability of indorsers of notes under facts of case—A blank indorsement of a negotiable promissory note cannot be altered by parol evidence—Presentment and protest held to have been waived under facts of this case.

MARX, J.

#### Epitomized Opinion
Published Only in Ohio Law Abstract

These actions were started in the Superior Court of Cincinnati by Armentrout to recover judgments on three notes against the Can-Bit Coal Co. and others. The plaintiff was president of the coal company. He agreed to supply money to the company as working capital provided the company would give him its notes and the individual defendants, officers of the company, would endorse the same. This was done. When the notes became due plaintiff sued upon them. Default judgment was rendered against the Coal Co. but two of the indorsers contested the same.

The issues of fact involved were: (1) was there any parol agreement varying the liability of the endorser? (2) Was evidence of such parol agreement admissible to vary the liability of the indorsers? (3) Were the indorsers released by the alleged failures to make proper demand, presentments and give notice of dishonor? The defendants maintained that there was an oral understanding to the effect that they were only liable in proportion to their stock interests and that the plaintiff was bound to contribute to the payments of the notes in proportion to his stock interests. In finding for the plaintiff, the Court held:

1. That the evidence was convincing that there was no parol understanding that the liability of each member of the corporation on these notes would be prorated according to his stock holdings.

2. The indorsement in blank of a negotiable instrument constitutes a written contract, which by reason of the Negotiable Instrument Law, is as clear, definite and certain as if the terms were written above the indorsement and such contract cannot be varied, altered or contradicted by parol evidence.

3. The waiver of presentment and notice of protest of a promissory note is affected under the Negotiable Instruments Law of this State, which provides that presentment for payment may be dispensed with by waiver, express or implied, where the indorsers are officers of the corporation who had knowledge at the maturity of the note and knew that there were no funds with which to pay it, and informed the holder of that fact.

Attorneys—Hunt, Bennett & Otter, for Armentrout; Burch & Peters and J. G. DeFosset, for Coal Co.; all of Cincinnati.

### No. 393
### UNION SAV. BANK & TRUST CO. v. AMERICAN EXPRESS CO.
Superior Court of Cincinnati
No. 58,878

951. PRINCIPAL AND AGENT—An agent is not liable for acts of disclosed principal—Where an agent agrees to be liable for the acts of his principal, he is responsible for any losses suffered by contracting party.

The two special instructions given to the jury at the request of the railroad company which the Court of Appeals found erroneous are as follows:

"5. The fact that the view of one approaching a railroad crossing was obstructed did not excuse his neglect to stop and listen, it made his neglect to do so greater."

"12. I charge you that Charles Bauer had a duty to look as far up the track for a train as an ordinarily prudent man would look, and he had no right to limit his looking to the distance over which a train running at any particular rate of speed would travel while he was crossing the track, when by looking he could have seen further, and an ordinarily prudent man would have looked further."

The four special interrogatories upon the issue of contributory negligence, the submitting of which at the request of the defendant the Court of Appeals found was error are as follows:

"1. Could the decedent, Charles Bauer, have seen the approaching train in time to stop his automobile before driving it upon the tracks?

"Answer: Yes.

2. How far was the decedent, Charles Bauer, from the track when he could have first seen the approaching train?

"Answer: Yes, 15 feet.

"3. At what points before he went on the track could the decedent. Charles Bauer, have seen this approaching train?

"Answer: Yes, two points; one north, one south of old house.

"6. Could the decedent, Charles Bauer, have heard the whistle or the ringing of the bell of the locomotive, if you find that such bell was rung, or the noise of the approaching train, if he had listened for same before going upon the track?

Answer: Yes."

The charges upon the subject of contributory negligence given at the request of the counsel for the Railroad Company in the giving of which the Court of Appeals found there was error in undue repetition, have to do with the duty of Bauer in approaching the railroad crossing and looking for trains and were substantially repetitions of the above special instructions given to the jury, and state and restate the duties of travelers so as to present the law in its different aspects. It is claimed that the Court of Appeals erred in its holding that there was error in the special charge and interrogatories, and the Supreme Court is asked to reverse its decision.

Attorneys—Keifer & Keifer, for Railroad Co.; Martin & Corry, for Bauer; all of Springfield.

